UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK A. MISSUD, | Case No.  15-cv-05596-JCS |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTIONS AND DISMISSING THE CASE WITH PREJUDICE** |
| CITY AND COUNTY OF SAN FRANCISCO, et al., | Re: Dkt. Nos. 32, 33, 35 |
| Defendants. | |

## I.      INTRODUCTION

On April 14, 2015, Plaintiff Patrick A. Missud filed suit in California Superior Court, County of San Francisco.  He eventually served the Complaint on Defendants the City and County of San Francisco (the "City"), the San Francisco Municipal Transportation Authority (SFMTA),[1] the San Francisco City Attorney's Office, City Attorney Dennis Herrera, SFMTA Board Member Tom Nolan, and Tegsco, LLC, which does business under the name AutoReturn ("AutoReturn").  Three motions are before the Court: (1) a Motion to Dismiss the Complaint filed by the City, City Attorney Herrera, and SFMTA Board Member Nolan (collectively, the "City Defendants"); (2) a Motion for Judgment on the Pleadings filed by AutoReturn; and (3) a Motion for Summary Judgment filed by Missud.  The Court finds the motions suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b).  For the reasons stated below, the City Defendants' Motion to Dismiss and AutoReturn's Motion for Judgment are GRANTED.  Missud's Motion for Summary Judgment is DENIED as moot.  The case is DISMISSED WITH PREJUDICE.[2]

---

[1] As a department of the City, SFMTA cannot be sued individually.  *See* Cal. Gov't Code §§ 23000, 23004.  All claims asserted against SFMTA are deemed to be asserted against the City.

[2] Plaintiff and all defendants who have been served have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).  Although a magistrate judge does not have jurisdiction over an action unless all parties have consented, this Court does not require

## II.    BACKGROUND

Missud has been declared a vexatious litigant and is the subject of two prefiling review orders.  *See Missud v. S.F. Super. Ct.*, No. 12-cv-3117-WHA, dkt. no. 74 (N.D. Cal. Sept. 24, 2012); *Patrick Missud v. Nev.*, No. 11-cv-3567-EMC, dkt. no. 88 (N.D. Cal. Mar. 22, 2012). Those orders bar him from filing complaints against D.R. Horton, Inc. and any judicial entities without first obtaining leave from the Court.  *See Missud v. Cal.*, No. 12-cv-5468-EMC, 2013 WL 450391, at *1 (N.D. Cal. Feb. 5, 2013) (hereinafter "*Missud I*").  The instant action falls outside the scope of those prefiling review orders.

The claims and allegations Missud asserts in this action are not new, however.  He has filed three prior actions involving similar allegations, two in this District and another in the California Superior Court, County of San Francisco (the "Superior Court").  In each, he complains that the defendants towed his cars illegally in retaliation for his exposure of a far-reaching government conspiracy related to the City's enforcement of the California Vehicle Code.[3]  *See* Compl. at 5–13.  The prior actions ("Prior Actions") are as follows: (1) *Missud I*, case number 12-cv-5468-EMC (N.D. Cal., initiated Oct. 15, 2012); (2) *Missud v. California*, case number CGC-14-537723 (S.F. Super. Ct., initiated Feb. 28, 2014) (hereinafter "Case 537723");[4] and (3) *Missud v. California*, case number 14-cv-1503-EMC (N.D. Cal., initiated April 1, 2014) (hereinafter "*Missud II*").

---

the consent of defendants who have not been served as they are not parties.  *See Buckley v. Wagstaffe*, No. 15-CV-06231-DMR, 2016 WL 2641541, at *1 (N.D. Cal. May 10, 2016) (*citing Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) (holding that magistrate judge had jurisdiction to dismiss prison inmate's action under 42 U.S.C. § 1983 as frivolous without consent of defendants because defendants had not been served yet and therefore were not parties); *United States v. Real Prop.*, 135 F.3d 1312, 1317 (9th Cir. 1998) (holding that magistrate judge had jurisdiction to enter default judgment in in rem forfeiture action even though property owner had not consented to it because 18 U.S.C. § 636(c)(1) only requires the consent of the parties and the property owner, having failed to comply with the applicable filing requirements, was not a party)).
[3] Missud also alleges here, as he has in several of his prior actions, that he is a federal informant. *See Missud I*, 2013 WL 450391, at *1; Notice of Removal ("NOR," dkt. no. 1), Ex. A ("Compl.," dkt. no. 1-1).
[4] In this Order, the Court refers to several documents filed in Case 537723.  None of the documents in that case were assigned docket numbers.  The Court identifies documents from the docket of Case 537723 by name and date only.  That docket can be accessed from the Superior Court's online services webpage (http://sfsuperiorcourt.org/online-services).

United States District Court
Northern District of California

The City Defendants request judicial notice of documents filed in the Prior Actions. Because resolving this matter requires consideration of the documents for which the City Defendants request notice and other documents filed in those actions, the Court begins by addressing judicial notice.

### A. Judicial Notice

#### 1. The Requests

The City Defendants request judicial notice of five public records that they filed as exhibits in support of their Motion to Dismiss. *See* City Defs.' Req. for Judicial Notice, dkt. no. 34 ("RJN") at 2, Exs. A–E (dkt. nos. 34-1 to -5). Missud has not opposed or otherwise responded to this request. The City Defendants seek judicial notice of the following records:

1. The first amended complaint that Missud filed in *Missud I*. No. 12-cv-5468-EMC (N.D. Cal., filed Oct. 24, 2012, dkt. no. 12); *see also* RJN, Ex. A.

2. The order granting the defendants' motions to dismiss filed in *Missud I*. No. 12-cv-5468-EMC (N.D. Cal., filed Feb. 5, 2013, dkt. no. 70); *see also* RJN, Ex. B; 2013 WL 450391.

3. The first amended complaint that Missud filed in Case 537723. No. CGC-14-537723 (S.F. Super. Ct., filed Feb. 28, 2014); *see also* RJN, Ex. C.

4. The order granting the defendants' motion to dismiss and remanding the plaintiff's state-law claims in *Missud II*. No. 14-cv-1503-EMC (N.D. Cal., filed July 8, 2014, dkt. no. 52); *see also* RJN, Ex. D; 2014 WL 3367953.

5. The Superior Court's order sustaining the City's demurrer to Missud's first amended complaint filed in Case 537723. No. CGC-14-537723 (S.F. Super. Ct., filed Mar. 10, 2015); *see also* RJN, Ex. E.

In addition to the City Defendants' requests, Missud has filed several requests for judicial notice in this action. *See* dkt. nos. 5, 8, 10, 13, 29, 30, 36, 37. The Court has also identified several documents from Missud's prior actions that are relevant to the present matter.

#### 2. Judicial Notice Analysis

Under Federal Rule of Evidence 201(b), the Court may take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's

United States District Court
Northern District of California

territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Court filings and judicial orders constitute government records that the Court may notice to determine issues and claims that were adjudicated in prior litigation. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record" to determine the issues that were litigated in other proceedings") (citing *Burbank–Glendale–Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998)).

The City Defendants request judicial notice of five court filings—two pleadings and three judicial orders—to support their argument, which is described in greater detail below, that Missud has advanced claims and allegations in prior lawsuits against the City that are identical to the claims and allegations he asserts against the City Defendants presently. *See* RJN. These filings constitute matters of public record that can be noticed under Rule 201(b)(2). *See Reyn's Pasta Bella*, 442 F.3d at 746 n.6. Accordingly, the Court grants the City Defendants' request for judicial notice in its entirety.

The Court is also permitted to take judicial notice of court filings sua sponte. *See* Fed. R. Evid. 201(c)(1); *Reyn's Pasta Bella*, 442 F.3d at 746 n.6; *Bank of N.Y. Mellon v. Hong Xuan Vo*, 14-cv-05110-LHK, 2015 WL 662221, at *1 n.1 (N.D. Cal. Feb. 12, 2015). Several documents filed in the Prior Actions are relevant to the present matter and fall within the ambit of Rule 201(c)(1). Those documents are as follows:

1.      The district court Summons issued for, *inter alia*, AutoReturn in *Missud I*. No. 12-cv-5468-EMC (N.D. Cal., filed Oct. 31, 2012, dkt. no. 25).

2.      The district court Order Re Service of Summons and Complaint in *Missud I*. No. 12-cv-5468-EMC (N.D. Cal., filed Dec. 11, 2012, dkt. no. 42).

3.      The City's Motion to Dismiss Missud's Complaint in *Missud I*. No. 12-cv-5468-EMC (N.D. Cal., filed Dec. 20, dkt. no. 45).

4.      The district court's Final Judgment in *Missud I*. No. 12-cv-5468-EMC (N.D. Cal., filed Jan. Feb. 5, 2013, dkt. no. 71).

5.      Missud's Notice of Appeal to the Ninth Circuit Court of Appeals in *Missud I*. No.

1  12-cv-5468-EMC (N.D. Cal., filed Feb. 22, 2013, dkt. no. 89).

2       6.     United States Supreme Court's Notice That Petition for Writ of Certiorari Was

3  Denied in *Missud I*.  No. 12-cv-5468-EMC (N.D. Cal., filed Feb. 28, 2014, dkt. no. 189).

4       7.     The City's Notice of Removal filed in *Missud II*.  No. 14-cv-1503-EMC (N.D. Cal.,

5  filed April 1, 2014, dkt. no. 1).

6       8.     The City's Motion to Dismiss Missud's Complaint in *Missud II*.  No. 14-cv-1503-

7  EMC (N.D. Cal., filed May 30, 2014, dkt. no. 31).

8       9.     The City's Demurrer in Case 537723.  No. 14-CGC-537723 (S.F. Super. Ct. filed

9  Feb. 3, 2015).

10      10.    The City's Memorandum of Points and Authorities in Support of its Demurrer in

11  Case 537723.  No. 14-CGC-537723 (S.F. Super. Ct., filed Feb. 3, 2015).

12      11.    Missud's Declaration Re Proof of Service in Case 537723.  No. 14-CGC-537723

13  (S.F. Super. Ct., filed Feb. 17, 2016).

14      12.    The Superior Court's Order After Hearing on Order to Show Cause in Case

15  537723.  No. 14-CGC-537723 (S.F. Super. Ct., filed Feb. 23, 2016).

16      13.    AutoReturn's Demurrer in Case 537723.  No. 14-CGC-537723 (S.F. Super. Ct.,

17  filed Mar. 17, 2016).

18      14.    AutoReturn's Memorandum of Points and Authorities in Support of Its Demurrer in

19  Case 537723.  No. 14-CGC-537723 (S.F. Super. Ct., filed Mar. 17, 2016).

20      15.    The Superior Court's Order on AutoReturn's Demurrer in Case 537723.  No. 14-

21  CGC-537723 (S.F. Super. Ct., filed May 6, 2016).

22      16.    The Superior Court's Order to Show Cause in Case 537723.  No. 14-CGC-537723

23  (S.F. Super. Ct., filed May 6, 2016).

24      17.    The Superior Court's Order After Hearing on Order to Show Cause in Case

25  537723.  No. 14-CGC-537723 (S.F. Super. Ct., filed Sept. 7, 2016).

26      18.    The Superior Court's Final Judgment in Case 537723.  No. 14-CGC-537723 (S.F.

27  Super. Ct., filed Sept. 7, 2016).

28      The Court takes judicial notice of these documents under Rule 201(b)(2).  As explained

United States District Court
Northern District of California

below, the City Defendants and AutoReturn are entitled to dismissal.  Missud's requests for

judicial notice are irrelevant to the Court's analysis of that determination.  Therefore, the Court

denies Missud's requests for judicial notice.

### B.    The Prior Actions

#### 1.   *Missud I* – the First Federal Action

On October 15, 2012, Missud initiated *Missud I*.  Nine days later, Missud amended his

complaint in that action, asserting various claims against several named defendants, among them

the City, SFMTA, and AutoReturn.[5]  *See* RJN, Ex. A; *see also Missud v. I*, 2013 WL 450391, at

*1–4.  There, as here, Missud asserted a 42 U.S.C. § 1983 claim against the City and AutoReturn.

The presiding judge, Judge Chen, described that § 1983 claim and its underlying allegations as

follows:

> SFMTA issues multiple citations in rapid succession to cars with
> expired registrations, and contracts with AutoReturn to tow the cars
> once [those cars] have accumulated five citations. These cars are
> then sold at weekly vehicle auctions. [Missud] alleges that this
> practice constitutes "an illegal taking under color of law or without
> notice" and "a major violation of the takings clause." He further
> alleges that the City of San Francisco illegally enforces tickets that
> are defective because they do not list the last four digits of the car's
> Vehicle Identification Number.

*Missud I*, 2013 WL 450391, at *1; *see also* RJN, Ex. A at 6–8.  The City moved to dismiss the

§ 1983 claim under Federal Rule of Civil Procedure 12(b)(6).  *See Missud I*, 2013 WL 450391,

at *1; *see also Missud I*, City's Mot. to Dismiss, dkt. no. 45.

In an order issued on February 5, 2013, the district court granted the City's motion with

prejudice.  *See Missud I*, 2013 WL 450391, at *8.  The district court held that Missud failed to

raise a "cognizable claim under the Takings Clause of the Fifth Amendment because his

allegations concern actions taken under the City's police powers."  *Id.* at *4.  The district court

---

[5] During *Missud I*, the district court issued a summons for the City and AutoReturn.  *See Missud I*,
Summons, dkt. no. 25.  However, Missud never served AutoReturn properly.  *See Missud I*, Order
Re Service of Summons, dkt. no. 42 ("As [Missud] has not filed proof that Defendants have been
properly served under Rule 4, this Court will not consider any further filings until he files such
proof.").  The district court entered judgment without AutoReturn appearing in the case.  *See*
*Missud I*, Judgment, dkt. no. 71.

United States District Court
Northern District of California

1  reasoned that "[t]owing cars that have accumulated an excessive number of parking tickets is an

2  exercise of police power, and not a taking for public purposes within the meaning of the Takings

3  Clause." *Id.* (citations omitted).

4       The district court also held that Missud failed to establish that the City violated his

5  procedural due process rights. The court reasoned that, even accepting as true Missud's allegation

6  of vehicle citations "issued in rapid succession," the City's practice still provided "sufficient

7  notice to meet the requirements of due process." *Id.* at \*5. The court also explained that Missud

8  failed to raise a viable due process claim regarding the City's alleged issuance of "defective

9  tickets" because due process in the context of a parking ticket requires "notice of the charges and

10  the procedures for challenging the ticket," and, according to Missud's allegations, he had in fact

11  "successfully challenged these tickets." *Id.*

12       After granting the City's motion, the district court issued final judgment against Missud in

13  accordance with its order. *See Missud I*, Judgment, dkt. no. 71; *see also Missud II*, 2013 WL

14  450391, at \*8. Missud appealed the district court's judgment to the Ninth Circuit, which affirmed,

15  and then to the Supreme Court, which denied certiorari. *See Missud I*, dkt. nos. 185-189.

16                    **2.   Initiation and Removal of Case 537723**

17       On February 28, 2014, the day that the Supreme Court denied certiorari in *Missud I*,

18  Missud filed a complaint in the Superior Court and initiated Case 537723. Missud amended that

19  complaint on March 3, 2014, naming several defendants, among them the City, SFMTA, SFMTA

20  Board Member Nolan, and AutoReturn. *See* RJN, Ex. C at 1. In the amended complaint, Missud

21  purported to represent a class of plaintiffs and asserted five causes of action: (1) "Fraud targeting

22  Missud and the class"; (2) "Conspiracy to Defraud Missud and the class"; (3) "Misrepresentations

23  made to Missud and the class"; (4) "Deceptive Trade Practices targeting Missud and the class";

24  and (5) "Intentional Deprivation of 42 USC §1983 Civil Rights as to Missud and the class." *See*

25  RJN, Ex. C at 8–9, 20. Missud's causes of action in the amended complaint seem to refer to a

26  section entitled *Points and Authorities* where he claimed that the defendants violated each of five

27  listed statutes. *See id.* at 12–15, 20. The listed statutes are as follows: (1) "California Civil Code

28  §3294: Fraud"; (2) "California Civil Code §1770: Misrepresentation and Deceit"; (3) "California

Business and Professions Code §17200 et seq: Unfair Competition"; (4) "California Government Code §12650 et seq: False Claims Act"; and (5) "STANDING TO SUE IN STATE COURT UNDER 42 USC §1983: Civil Action for Deprivation of Rights." *Id.* at 12–15. Shortly after Missud filed the amended complaint, the City removed the case to this District.[6] *See Missud II*, Not. of Removal, dkt. no. 1. The removed action became Case No. 14-1503 (*Missud II*) and was assigned to Judge Chen.

### 3. *Missud II* – the Second Federal Action

After the City removed Case 537723, it moved to dismiss Missud's amended complaint. *See Missud II*, 2014 WL 3367953, at *1; *see also Missud II*, City's Mot. to Dismiss, dkt. no. 31. On July 8, 2014, the district court granted the City's motion and dismissed Missud's 42 U.S.C. § 1983 claim with prejudice. *See Missud II*, 2014 WL 3367953, at *1. The court declined to exercise supplemental jurisdiction over his state-law claims, remanding those claims to state court. In the order granting the City's motion to dismiss, the district court described the allegations that Missud asserted in the amended complaint as follows:

> [Missud] alleges that the San Francisco Police Department and Municipal Transit Authority issue citations for "expired tabs" (presumably for not having up to date registration) and that after the vehicle has accumulated five such citations, the City of San Francisco and Defendant Auto-Return tow the car and store it, imposing "hefty fees" on the vehicle owner. [Missud] alleges that he received five "expired tabs" tickets in "*rabid* succession" [and] that part of the "racketeering scheme" is the fact that the City and County of San Francisco have "[i]llegally demand[ed] 'holds' on DMV re-registration so that it$ color-of-law citations are first paid." Another alleged racketeering scheme is that the City and County of San Francisco attempts to "enforce unenforceable, defective tickets" that do not include the last four digits of the vehicle's Vehicle Identification Number ("VIN"). Plaintiff alleges he received a number of citations which omitted the vehicle's VIN, and yet the "City insisted on their invalidity." Plaintiff's additional allegations of wrongdoing all revolve around these alleged schemes related to traffic enforcement and vehicle towing.

*Id.* at *1; *see also* RJN, Ex. C at 16–19.

---

[6] As explained below, Missud failed to serve the complaint on AutoReturn before the case was remanded to the Superior Court. After the remand and Case 537723 had resumed, Missud served AutoReturn.

The district court held that Missud's § 1983 claim was barred by the federal doctrine of collateral estoppel because judgment had already been entered on that claim in *Missud I*. *See Missud II*, 2014 WL 3367953, at *2–4. The court analyzed this issue under the three-part test for collateral estoppel, which requires that "(1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated by the party against whom preclusion is asserted in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action." *Id.* (citing *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1096 (9th Cir. 2004)). The court found that all three requirements were met. *Id.*

First, the district court found that the issues raised by the § 1983 claims in *Missud I* and *Missud II* were essentially identical because both were based on the same alleged racketeering scheme. *Id.* at 2–3. The court acknowledged that in *Missud II*, Missud included allegations about more recent incidents of unlawful towings and citations, but found that those incidents were part of the same scheme that Missud alleged in *Missud I*. *Id.* at *3. Second, the court found that Missud, as the party who litigated the issues in the prior action, was subject to the doctrine of collateral estoppel. *Id.* at 3. Third, the court found that the issues underlying the § 1983 claim in *Missud I* were actually litigated in that action and formed an essential and necessary part of the judgment. *Id.* at 3. Finding that Missud's only federal claim was barred under the doctrine of collateral estoppel, the district court remanded the case to the Superior Court for further proceedings on Missud's state-law claims. *Id.* at 4.

### 4. Case 537723 After Remand

After the district court remanded *Missud II* to the Superior Court, Case 537723 resumed. On February 3, 2015, the City filed a demurrer to Missud's amended complaint, asserting that Missud's claims against it failed because Missud did not file a pre-litigation claim as required under California Government Code section 945.4. *See* Case 537723, City's Demurrer, filed Feb. 3, 2015; City's Mem. of P. & A., filed Feb. 3, 2015. The City further asserted that Missud failed to allege any valid claims. *Id.* The Superior Court agreed with the City as to the section 945.4 requirement, holding that where a plaintiff seeks money damages from a local public entity, the

United States District Court
Northern District of California

timely filing of a written claim with the proper officer or body prior to initiating litigation is an element of a valid cause of action. *See* RJN, Ex. E. The Superior Court sustained the City's demurrer on that basis without addressing whether Missud had alleged valid claims. *See id.* It further found that Missud could not cure the deficiency because he had offered insufficient evidence to substantiate his assertions that he had presented claims prior to litigation and filing such claims *after* a lawsuit is initiated does not meet the pre-litigation presentment requirements. *Id.* Therefore, the Superior Court sustained the demurrer without leave to amend on March 10, 2015. RJN, Ex. E.

On February 23, 2016, the Superior Court also dismissed with prejudice Defendants State of California, Tom Nolan, San Francisco Trial Courts, Cynthia Lee, Xerox Solutions, LDC Collections and David Cummins on the basis that Missud had failed to serve them properly even though the case had been filed almost two years earlier. *See* Case 537723, Order After Hearing, filed Feb. 23, 2016. The Superior Court found that dismissal with prejudice was an appropriate sanction because nothing short of terminating sanctions was likely to deter Missud from future similar conduct. *Id.* It explained:

> [Missud's] conduct has been willful, he has engaged in similar conduct in other litigation, he is trained in the law, the conduct represents a pattern of activity, and he demonstrates obvious contempt for the rule of law. . . . The culmination of sham pleadings, dilatory conduct and unrepentant behavior leads to the conclusion that terminating sanctions are appropriate.

*Id.* (citing Cal. Code Civ. P. § 583.150).

On March 17, 2016, remaining defendants AutoReturn and John Wicker (referred to here collectively as AutoReturn) filed a demurrer to Missud's amended complaint. *See* Case 537723, AutoReturn's Demurrer, filed Mar. 17, 2016; AutoReturn's Mem. of P. & A., filed Mar. 17, 2016. In the demurrer, AutoReturn challenged Missud's claim under California Civil Code section 3294 on the basis that it does not constitute a cause of action. *Id.* It further asserted that Missud failed to allege facts sufficient to state valid claims under: 1) the Consumer Legal Remedies Act, California Civil Code section 1770 ("CLRA"); 2) California's Unfair Competition Law, California Business & Professions Code section 17200 *et seq.* ("UCL"); and  3) California's False Claims

1    Act, California Government Code sections 12650 *et seq.*, ("CFCA").  AutoReturn further argued

2    that the defects in Missud's complaint could not be fixed by amendment and therefore, that

3    Missud should not be permitted to file an amended complaint.  The court held a hearing on the

4    demurrer on April 29, 2016 and subsequently sustained the demurrer without leave to amend,

5    stating in its May 6, 2016 order that the court had "considered the papers on file" and that Missud

6    had neither filed an opposition to the demurrer nor appeared at the hearing.  *See* Case 537723,

7    Order on AutoReturn's Demurrer, filed May 6, 2016.

8           That same day, the Superior Court ordered Missud to show cause why the entire case or

9    individual defendants should not be dismissed with prejudice as a sanction for Missud's failure to

10    serve all defendants properly and failure to attend the April 29, 2016 hearing.  Case 537723, Order

11    to Show Cause, filed May 6, 2016.  On August 26, 2016, the Superior Court held a hearing on its

12    order to show cause and Missud again failed to appear.  *See* Case 537723, Order After Order to

13    Show Cause Hearing, filed Sept. 7, 2016.  On September 7, 2016, the Superior Court dismissed

14    Case 537723, in its entirety, with prejudice, finding that Missud failed to file a "coherent written

15    opposition" to its order to show cause, demonstrate that he "made good faith efforts to effectuate

16    service of process on the remaining unserved Defendants," or demonstrate that he "paid the

17    monetary sanctions imposed" by the Superior Court in June 2015.  *Id.*  The Superior Court

18    reiterated that Missud's conduct had been willful, and that he had engaged in similar conduct in

19    other actions.  *Id.*  The Superior Court held that no sanction "short of terminating sanctions would

20    deter [Missud] from his course of conduct," and that terminating sanctions were appropriate.  *Id.*

21    (citing Cal. Code Civ. Proc. § 583.150).  The Superior Court then entered judgment "in favor of

22    all Defendants and against Plaintiff Patrick A. Missud."  Case 537723, Final Judgment, filed Sept.

23    7, 2016.

24    **C.    The Complaint in this Case[7]**

25           Missud initiated this action in the Superior Court on April 14, 2015.  *See* Compl. at 1.  The

26

27    _____

      [7] Throughout his Complaint, Missud replaces the letter "s" with dollar signs.  In quoting Missud's
28    complaint, the Court replaces the dollar signs with the letter "s".

United States District Court
Northern District of California

1    City Defendants later removed the action to this Court.  *See* NOR.

2        In the Complaint,[8] Missud alleges that officials and employees of the City are engaged in a

3    racketeering scheme that violates state and federal laws.  *Id.* at 1.  He alleges that the City carries

4    out this scheme through SFMTA to exploit low-income and minority residents.  *Id.* at 3.

5    According to Missud, the City stole five of his vehicles in carrying out this scheme and in

6    retaliation for his attempts to expose it.  *Id.* at 3–10.

7        The Complaint goes on to describe the Prior Actions, which Missud alleges targeted the

8    same conspiracy that is the subject of the instant action.  *See id.* at 10–13, 16.  Missud alleges in

9    the Complaint that government officials and judges conspired to have those Prior Actions

10   dismissed.  *See id.*  In particular, with respect to Case 537723, Missud alleges that the Superior

11   Court "rig[ged] dismissal of [C]ase 537723 for the City."  *Id.* at 13.  He similarly suggests that

12   Judge Chen "rigged" the outcome of *Missud I* and committed a "second round of treason" when he

13   dismissed *Missud II*.  *Id.* at 10–11.  Likewise, he alleges that the Circuit Judges who affirmed the

14   dismissal of his cases were "corrupt" and ruled against him based on a "ruse."  *Id.* at 11.

15       The Complaint further alleges as follows.  The City has "the nation's [second] most

16   bloated municipal employee payroll . . . ."  *Id.* at 16.  SFMTA has admitted to "setting

17   'performance standards' to meet its enormous payroll and pay an army of undeserving

18   employees . . . ."  *Id.*  SFMTA has to "steal from City residents" to pay the $90,000 salaries

19   received by SFMTA employees.  *Id.*  SFMTA and the San Francisco Police Department are

20   engaged in a racketeering scheme that is identical to other schemes that he alleges were

21   perpetrated by local governments in Bell, California and Ferguson, Missouri.  *Id.* at 16–17.

22       In a section entitled *Anticipated Defenses*, the Complaint alleges that "Defendants will

23   again lie that they didn't have proper notice of these claims and therefore the suit should be

24   dismissed. The City's Claims Administrator already thusly lied for the record in other cases . . . ."

25   *Id.* at 18.

26       In the section entitled *Causes of Action* the Complaint states, "All the above statements and

27   _____

28   [8] As no amended complaint has been filed, the original complaint is the operative complaint.

United States District Court
Northern District of California

United States District Court
Northern District of California

allegations are incorporated by reference herein and as if fully reproduced below. All Causes of Action are against all Defendants." *Id.* at 20. The Complaint lists five causes of action: (1) "Fraud targeting Missud"; (2) "Conspiracy to Defraud Missud"; (3) "Misrepresentations made to Missud"; (4) "Deceptive Trade Practices targeting Missud"; and (5) "Intentional Deprivation of 42 U.S.C. §1983 Civil Rights as to Missud." *Id.* at 20–21. The causes of action seem to be based on various statutes listed in the section of the Complaint entitled *Points and Authorities*. *See id.* at 18–20. There, Missud quotes five statutes, and claims that each was violated by Defendants, as described below.

      1.    Fraud under California Civil Code § 3294 (the Fraud Claim):

> Defendants have with malice retaliated against, oppressed, and defrauded Missud. They willfully and consciously financially-injured Missud and disregarded his civil rights which is despicable conduct for which punitive damages are now available. Defendants first issued color-of-law citations to steal Missud's money, and then stole 5 of his cars to stop his exposure of their multi-million-dollar crimes, fraud, Racketeering, and the targeting of mostly minority constituents to stuff City coffers.

*Id.* at 18–19.

      2.    Misrepresentation and Deceit under California Civil Code § 1770 (the CLRA Claim):

> The City performs unfair and deceptive acts by partnering with private corporations to steal constituents' property. Through LDC Collections, AutoReturn, and other companies, the City steals money & vehicles, obtains vehicle titles by color-of-law, and then passes the goods off to onknowing [*sic*] 3rd parties at lien sales.

*Id.* at 19.

      3.    Unfair Competition under California Business and Professions Code § 17200 (the UCL Claim):

> The City gives AutoReturn exclusive authority to seize, tow, store, and steal constituents' vehicles under color-of-law. The City also allows AutoReturn to set anticompetitive anti-trust monopoly rates for its services. All these deceptive, fraudulent, and unfair practices in restraint of trade and competition can be enjoined in any court of competent jurisdiction.

*Id.* at 19.

      4.    False Claims under California Government Code § 12650 (the CFCA Claim):

1

2

3

> The City contracts with private corporations which then provide the City with bills and other financial instruments for payment. AutoReturn routinely sells stolen cars for the City and bills the City for sales services, and towing & storage fees. AutoReturn makes demands on the City for payment on illegal services which are False Claims.

4

*Id.* at 19–20.

5

6

      5.     Deprivation of Rights under 42 U.S.C. § 1983:

7

8

9

> These Defendants deprived Missud of state and federal due process, fairness, equality,..., and of personal property (5 cars) in violation of the takings clause. For these reasons and many, many more, this action at law, suit in equity, and proper proceeding for redress is now filed. The Individual Defendants acted so far outside the scopes of respective official duties that any relief which they could have granted was and is unavailable.

10

*Id.* at 20.

11

12

**D.    The Motions**

13

    **1.  The City Defendants' Motion to Dismiss**

14

       The City Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure

15

12(b)(6). City Defs.' Mot. to Dismiss ("City Mot.," dkt. no. 33) at 1. They contend Missud's

16

claims fail for two reasons: (1) he fails to allege sufficient facts to state any valid claims; and (2)

17

his claims are barred under the doctrines of collateral estoppel or res judicata.

18

       The City Defendants assert that Missud's § 1983 claim should be dismissed because

19

Missud does not identify which of his constitutional rights were violated and who violated those

20

rights. *Id.* To the extent this claim (like his § 1983 claims in *Missud I* and *Missud II*) is based on

21

the Takings Clause of the Fifth Amendment and the Due Process requirements of the Fourteenth

22

Amendment, both of these theories have already been rejected, the City Defendants contend.

23

       The City Defendants argue further that Missud fails to articulate any state law violations in

24

his complaint. They argue that the Fraud Claim is deficient because the section on which Missud

25

bases the claim, California Civil Code section 3294, only sets forth when punitive damages for

26

fraud may be awarded against a defendant and does not create a cause of action. *Id.* at 5–6. With

27

respect to the CLRA Claim, the City Defendants argue that the Complaint does not establish that

28

Missud is a *consumer*, as required under the CLRA. *Id.* at 6. The City Defendants also argue that

United States District Court
Northern District of California

the UCL Claim fails because Missud does not allege sufficient facts to show that the Business and Professions Code applies. *Id.* The City Defendants further argue that the CFCA Claim fails because Missud does not allege that the California government or any political subdivision within it has been defrauded by AutoReturn; and because Missud is not an officer, employee, or agent of the California government as the CFCA requires. *Id.* According to the City, these failures warrant dismissal of the Complaint in its entirety. *See id.* at 3, 5–6.

Second, the City Defendants contend that Missud's causes of action are subject to dismissal because they are identical to claims that he made and issues that he raised in prior cases. *Id.* at 6–7 (citing, *inter alia*, *Boeken v. Phillip Morris, USA*, 48 Cal. 4th 788, 797 (2010); *Kay v. City of Rancho Palos Verdes*, 504 F.3d 803, 809 (9th Cir. 2007)). Therefore, the City Defendants argue, Missud's claims are barred under the doctrines of collateral estoppel and/or res judicata.

The City Defendants also contend that the Court should deny Missud leave to amend the Complaint, arguing that its deficiencies are incurable. *Id.* at 7.

### 2. AutoReturn's Motion for Judgment on the Pleadings

AutoReturn moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) or, alternatively, summary judgment under Rule 56(a). *See Tegsco Mem. in Supp. of Mot. for J.* (dkt. no. 32-1) at 2–4. In support of its motion, AutoReturn contends that none of Missud's causes of action state a plausible claim and AutoReturn is entitled to judgment on the pleadings.[9]

AutoReturn first argues that Missud fails to state a legally cognizable claim for fraud. *Id.* at 4. Like the City Defendants, AutoReturn asserts that California Civil Code section 3294 does not give rise to an independent substantive claim; rather, it sets forth when a plaintiff may recover punitive damages for fraud claims. *Id.* AutoReturn also asserts that, if the cause of action is construed as a claim of common-law fraud, the Complaint does not include allegations establishing the necessary elements of such a claim. *Id.* (citing CACI 1900; Cal. Civ. Code § 1701(1)).

---

[9] AutoReturn also asserts that, although the Complaint alleges that AutoReturn towed three of Missud's vehicles, it does not allege that AutoReturn towed the other two. *Id.* at 2 n.2.

United States District Court
Northern District of California

1    Next, AutoReturn argues that the CLRA Claim fails as a matter of law because the

2 Complaint does not allege that Missud is a *consumer* under the CLRA. *Id.* at 5.

3    Addressing the UCL Claim, AutoReturn argues that the cause of action fails to meet the

4 unfair or fraudulent prongs contained in the statute. *Id.* at 5–6 (citing Cal. Bus. & Profs. Code

5 § 17200). AutoReturn further asserts that the conduct of which Missud complains is immune from

6 antitrust laws because AutoReturn towed vehicles as a private company that was carrying out

7 California's comprehensive state regulatory program for towing, impounding, and disposing of

8 vehicles in accordance with the California Vehicle Code. *Id.* at 6 (citing *FTC v. Phoebe Putney*

9 *Health Sys., Inc.*, 133 S.Ct. 1003, 1010 (2013)). AutoReturn also asserts that the Complaint does

10 not allege that AutoReturn made a fraudulent or deceptive advertisement or statement to the

11 public, and, as a result, the Complaint fails to establish the elements of a UCL violation. *Id.*

12    AutoReturn also argues that the CFCA Claim fails as a matter of law. *Id.* at 7. AutoReturn

13 asserts that Missud lacks standing to sue under the CFCA because he is not a state officer,

14 employee, or agent. *Id.* AutoReturn also asserts that Missud has failed to allege facts indicating

15 that AutoReturn defrauded the State of California or any of its political subdivisions as the statute

16 requires. *Id.* AutoReturn points out that, contrary to that requirement, Missud has alleged that

17 local governments and AutoReturn are working together in an active conspiracy. *Id.*

18    Finally, addressing Missud's 42 U.S.C. § 1983 cause of action, AutoReturn argues that the

19 § 1983 Claim fails because it is vague and does not include allegations establishing that

20 AutoReturn interfered with Missud's constitutional rights. *Id.* at 7–8. AutoReturn asserts that the

21 Complaint does not allege that AutoReturn had a role in the judicial proceedings related to the

22 towing of Missud's cars and, as a result, it is entitled to judgment on the claim. *Id.* at 8. In the

23 alternative, AutoReturn seeks summary judgment on this cause of action, arguing that

24 uncontroverted evidence proves AutoReturn towed Missud's cars legally, and Missud failed to

25 prevent their sale at auction. *Id.*

### 3. Missud's Opposition to Defendants' Motions

On August 16, 2016, eleven days after the deadline set by the Court for filing opposition briefs, *see* dkt. no. 27, Missud filed a brief opposing Defendants' motions.[10]  *See* Opp'n to Defs.' Mots., dkt. no. 40 ("Missud Opp'n").  The Opposition is devoid of legal argument, although it lists various criminal statutes that are not relevant to Missud's claims and refers to one case, "*Tenderloin Housing v. Sparks*," without providing a case citation.[11]  Indeed, Missud's opposition brief does not include any meaningful responses to Defendants' arguments.  Instead, the document is rife with invective and offensive language.

### 4. The City Defendants' Reply

The City Defendants reply that the Opposition is not responsive to the legal issues they raise in their motion.  City Defs.' Reply Mem. (dkt. no. 41) at 2.  The City Defendants further argue that the Opposition articulates neither a constitutional violation that gives rise to a cognizable claim under 42 U.S.C. § 1983 nor a valid claim under California law.  *Id.*  The City Defendants contend that because Missud fails to oppose their motion in a meaningful way, their motion should be granted and Missud's claims against them should be dismissed without leave to amend.  *Id.*

### 5. AutoReturn's Reply

AutoReturn contends in its Reply brief that the Court should disregard Missud's Opposition on the basis that it was untimely.  Reply Mem. in Supp. of Tegsco's Mot. ("AR Reply," dkt. no. 42) at 2.  It argues further that Missud's Opposition does not address the arguments in its motion relating to the deficiencies in Missud's Complaint or raise a triable issue of fact that defeats AutoReturn's request for summary judgment.  *Id.*  Nor should Missud be afforded the lenience to which pro se litigants ordinarily are entitled, AutoReturn argues, because

---

[10] Missud, who does not file documents with the Court electronically, submitted the Opposition to the Court on August 16, 2016.  The Opposition was entered into the Court's ECF docket on August 18.

[11] Missud might be referring to *Tenderloin Housing Clinic, Inc. v. Sparks*, 8 Cal. App. 4th 299 (1992).  It is not clear, however, how that case relates to any of the issues raised by Defendants' motions.

United States District Court
Northern District of California

although he has been disbarred, Missud is a trained attorney acquainted with basic procedural rules. *Id.* Therefore, AutoReturn asserts, its motion should be granted. *Id.*

### 6.  Missud's Motion for Summary Judgment

#### a.  Missud's Motion

On July 14, 2016, Missud filed a document entitled "FRCP Rule 65 Motion for Mandatory Summary Judgment." Pl.'s FRCP Rule 65 Mot. for Summ. J. (dkt. no. 35) ("Missud Summary Judgment Motion"). Although in the caption and throughout his brief he refers to "Rule 65" of the Federal Rules of Civil Procedure (governing injunctions and restraining orders), it appears that Missud intended to invoke Rule 56 (governing summary judgment motions) as the text of the Rule quoted in his brief corresponds to the text of Rule 56. *See, e.g.*, *id*. at 2–3. Missud asserts that pursuant to Federal Rules of Civil Procedure 16(f) and 37(b), judgment should be entered automatically in his favor as to all of his claims because Defendants spoliated evidence and violated the Court's Standing Order by selling the cars that he alleges in his Complaint were improperly towed. *Id*. at 4–5. Missud further asserts that if the Court reaches the merits, he has sufficient evidence that supports his claims and warrants entry of summary judgment in his favor, even though the Court never "formally opened" discovery in this case. *Id.* at 2–3. According to Missud, that evidence includes DMV records, false statements by the City, admissions by AutoReturn's Vice President, AutoReturn's financial statements, admissions by AutoReturn to illegal and anticompetitive behavior, and defective vehicle citations related to the towing of Missud's cars. *Id.* at 3. Missud attaches some of this evidence to his summary judgment motion as exhibits.

#### b.  The City Defendants' Response

The City Defendants respond that Missud's summary judgment motion should be denied because he fails to allege facts sufficient to state a violation of state or federal law. *See* City Defs.' Opp'n to Pl.'s R. 65 Mot. (dkt. no. 39) at 4–7. In support of their response, the City Defendants reiterate the arguments contained in their motion to dismiss. *See id.*; *see also* City Mot. at 5–6.

#### c.  AutoReturn's Response

Like the City Defendants, AutoReturn contends Missud fails to demonstrate that he is

18

1    entitled to summary judgment on any of his claims.  Tegsco's Opp'n to Pl.'s R. 65 Mot. (dkt. no.

2    38) at 2, 4.  AutoReturn observes that Missud's motion "barely mentions" AutoReturn, instead

3    focusing on the alleged wrongdoing of City officials.  *Id.* at 4.  It then addresses each of Missud's

4    claims, reiterating many of the same challenges AutoReturn raised in its motion for judgment on

5    the pleadings.  *See id.* at 4–6.  In addition, with respect to Missud's 42 U.S.C. § 1983 claim,

6    AutoReturn points out that the evidence Missud submitted in support of his summary judgment

7    motion includes a letter from AutoReturn reflecting that it confirmed that litigation was not

8    pending and that there were no "evidence holds" on Missud's vehicles prior to their sale at

9    auction, showing that AutoReturn did not violate Missud's due process rights when it sold his

10   vehicles.  *Id.* at 5–6 (citing Missud Summary Judgment Motion, Ex. 8).

## III.    ANALYSIS

### A.    Legal Standard

13        A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and a motion for

14   judgment on the pleadings under Rule 12(c) are functionally interchangeable.  *See Dworkin v.*

15   *Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989); *Ross v. U.S. Bank Nat. Ass'n*, 542

16   F. Supp. 2d 1014, 1023 (N.D. Cal. 2008).  Under Rule 12(b)(6), a party may move to dismiss a

17   complaint for failure to state a claim for which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

18   Rule 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are

19   closed—but early enough not to delay trial."  Fed. R. Civ. P. 12(c).  The Ninth Circuit has

20   explained that, "[i]n deciding a motion to dismiss, the district court must accept as true all material

21   allegations in the complaint and construe them in the light most favorable to the plaintiff.

22   Similarly, a judgment on the pleadings is appropriate when, even if all the allegations in the

23   complaint are true, the moving party is entitled to judgment as a matter of law."  *Westlands Water*

24   *Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993) (citations omitted).  Thus, under either

25   Rule 12(b)(6) or Rule 12(c), "a court must determine whether the facts alleged in the complaint,

26   taken as true, entitle the plaintiff to a legal remedy, and dismiss the claim or enter judgment on the

27   pleadings if the complaint fails to state a legally sufficient claim."  *Ross*, 542 F. Supp. 2d at 1023.

28        At the pleading stage, a plaintiff's burden is relatively light.  Rule 8(a) of the Federal Rules

United States District Court
Northern District of California

of Civil Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Rather, a claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Twombly*, 550 U.S. at 570).  Dismissal of a claim under Rule 12(b)(6) or 12(c) may be based on the lack of a cognizable legal theory or on the absence of facts that would support a valid theory.  *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

As a general rule, the Court cannot consider factual material extrinsic to the pleadings when deciding Rule 12 motions.  *See* Fed. R. Civ. P. 12(d).  The Court may, however, consider extrinsic material that is properly the subject of judicial notice as long as the facts noticed are not "subject to reasonable dispute."  *See Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting Fed. R. Evid. 201(b)).

**B.    Overview of Preclusion Doctrines**

In federal court, prior judgments by both state and federal courts may be given preclusive effect under the doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion).  With respect to state court judgments, this doctrine is embodied in federal law, which specifically requires that "all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so."  *Allen v. McCurry* 94, 96 (1980) (citing 28 U.S.C. § 1738 (1976)).  In *Allen v. McCurry*, the Supreme Court explained that the related doctrines of res judicata and collateral estoppel were developed to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by

United States District Court
Northern District of California

1   preventing inconsistent decisions, encourage reliance on adjudication." *Id.*  In addition, where

2   preclusive effect is given to state-court judgments, application of the doctrines promotes "the

3   comity between state and federal courts that has been recognized as a bulwark of the federal

4   system." *Id.* at 95–96 (citations omitted).

5         When a federal court addresses the preclusive effect of a prior judgment by a federal court,

6   it applies federal common law to the preclusion analysis.  *See McQuillion v. Schwarzenegger*, 369

7   F.3d 1091, 1096 (9th Cir. 2004).  On the other hand, state law applies to a federal court's

8   preclusion analysis when the earlier case was adjudicated in state court.  *See Migra v. Warren City*

9   *Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).  Here, judgments have been entered against

10  Missud on similar or identical claims by both state and federal courts.  In particular, a court in this

11  District has entered judgment against Missud on his § 1983 claim in both *Missud I* and *Missud II*

12  while the Superior Court entered judgment against Missud on the same or similar state law claims

13  as are asserted in this action.  Therefore, the undersigned applies federal common law rules of

14  preclusion to Missud's § 1983 claim and California's law of preclusion to Missud's state-law

15  claims.

16  **C.      Missud Is Precluded from Asserting His Claims Against the City Defendants**

17        Missud asserts five claims against the City Defendants.  For the reasons stated below, the

18  Court concludes all of these claims are barred because judgment has already been entered against

19  Missud on identical claims in either state or federal court.

20  **1.   The § 1983 Claim Is Subject to Federal Collateral Estoppel**

21        As discussed above, in *Missud II*, the court determined that Missud was collaterally

22  estopped from asserting his 42 U.S.C. § 1983 claim because judgment had already been entered

23  against him on a § 1983 claim in *Missud I* that raised the same issues.  Under the federal collateral

24  estoppel doctrine, the Court considers three factors to determine whether an issue is precluded:

25        (1) the issue at stake must be identical to the one alleged in the prior
      litigation; (2) the issue must have been actually litigated by the party
26      against whom preclusion is asserted in the prior litigation; and
      (3) the determination of the issue in the prior litigation must have
27      been a critical and necessary part of the judgment in the earlier
      action.

28

United States District Court
Northern District of California

*McQuillion*, 369 F.3d at 1096 (quoting *Trevino v. Gates*, 99 F.3d 911, 923 (9th Cir. 1996)) (internal quotation marks and brackets omitted).  In *Missud II,* Judge Chen found that all three requirements were met.  Likewise, the undersigned concludes Missud's § 1983 raises the same issues he raised in his two prior actions and, therefore, that the claim is barred under the doctrine of collateral estoppel.[12]

       a.  Identical Issues

The issues raised by Missud's § 1983 claim in this action are identical to those adjudicated in *Missud I* and *Missud II*.  In the Prior Actions, Missud alleged that the City engaged in racketeering schemes to generate revenue illegally.  *See Missud II*, 2014 WL 3367953, at *2.  In particular, the schemes alleged in the prior cases consisted of issuing citations for "expired tabs" and enforcing void citations under California Vehicle Code § 40202.  *Id.*  Here, as in the prior cases, the alleged schemes include "[r]abidly issuing redundant expired tabs" and "enforcing VC40202-void citations."  All the alleged schemes are based on the City's enforcement and adjudication of vehicle-related laws.  *See* Compl. at 9 n.1.  The Court also notes that the complaint in this action uses language that appears to be taken almost verbatim from the § 1983 claim in *Missud II*.  *Compare* Compl. at 20 *with* RJN, Ex. C at 14.  Therefore, the Court concludes this element of the test is met.

       b.  Prior Party

The City Defendants have asserted the collateral estoppel doctrine against Missud, who is a party to the prior actions in which judgment was entered.  Therefore, the second requirement of the collateral estoppel test is met.  *See McQuillion*, 369 F.3d at 1096.[13]

---

[12] The Court notes that under both federal and state law, there is significant overlap between the doctrines of collateral estoppel and res judicata.  Following Judge Chen's lead, the undersigned addresses Missud's § 1983 claim under the doctrine of collateral estoppel and therefore does not reach the question of whether this claim is also barred under the doctrine of res judicata.

[13] To the extent that the City Defendants include individuals and entities who were not properly served or were not named defendants in Missud's prior actions, the Ninth Circuit has recognized that collateral estoppel may be invoked by "a defendant attempting to preclude a plaintiff from relitigating an issue that the plaintiff previously litigated unsuccessfully against a different party." *State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 714 (9th Cir. 2005).  The Supreme Court has explained that "[d]efensive use of collateral estoppel precludes a plaintiff from relitigating identical issues by merely 'switching adversaries.'"  *Parklane Hosiery*

1

### c.   Issue Determination

2        Finally, in Missud's prior federal actions, the district court's determination of the issue

3  underlying the present § 1983 claim was a critical and necessary part of the judgments in those

4  cases.  *See McQuillion*, 369 F.3d at 1096.  In *Missud I*, the district court found that SFMTA's

5  ticket and towing practices did not violate Missud's constitutional rights and dismissed his

6  Takings Clause and Due Process Clause claims with prejudice.  *See Missud I*, 2013 WL 450391, at

7  *4–5.  In *Missud II*, the district court recognized that it had rejected Missud's constitutional

8  arguments in *Missud I* and held that he was collaterally estopped from reasserting them.  *See*

9  *Missud II*, 2014 WL 3367953, at *2.  The court also recognized that it would have found that

10  Missud failed to state a claim under 42 U.S.C. § 1983 had it reached that question.  *Id.* at *3–4.

11  As Missud also acknowledges in the Complaint, the § 1983 claim asserted in this action was

12  considered and dismissed with prejudice in those prior federal cases.  *See* Compl. at 14.  Thus, the

13  question of whether Missud's constitutional rights were violated when his cars were towed was

14  determined fully in his prior actions.  He is collaterally estopped from raising the same issue in

15  this action in his § 1983 claim.

16        **2.   California Res Judicata Applies to Missud's State-Law Claims**

17        Under California law, like federal law, there is "significant overlap" between the doctrines

18  of res judicata and collateral estoppel.  *Gemini Ins. Co. v. W. Marine Ins. Servs. Corp.*, No. CIV S-

19  10-3172 KJM, 2012 WL 2934657, at *5 (E.D. Cal. July 18, 2012) (citing *Vandenburg v. Superior*

20  *Court*, 21 Cal. 4th 815, 828 (1999)).  Further, as the California Supreme Court recognized in *DKN*

21  *Holdings LLC v. Faerber*, the terminology used by California courts to discuss the two doctrines

22  has not always been consistent, giving rise to some confusion.  61 Cal. 4th 813, 824 (2015).  In

23

24  *Co., Inc. v. Shore*, 439 U.S. 322, 329 (1979).  However, a court's application of the doctrine must
    be just and equitable.  *See Blonder-Tongue Labs. Inc. v. Univ. of Ill.*, 402 U.S. 313, 333–34
25  (1971).  Factors that may be considered to determine whether the assertion of defensive collateral
    estoppel is equitable include: (1) the potential for inconsistent outcomes; (2) the plaintiff's prior
26  ability to join the new parties in the prior action; and (3) judicial economy.  *Hynix Semiconductor*
    *Inc. v. Rambus Inc.*, No. 00-cv-20905-RMW, 2009 WL292205, at *2–6 (N.D. Cal. Feb. 3, 2009).
27  Under the facts here, the Court concludes that it just and equitable to permit all the City
    Defendants to invoke the doctrine of collateral estoppel against Missud.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

*DKN*, the California Supreme Court used the term "claim preclusion" to describe the "primary aspect" of res judicata and "issue preclusion" to describe the collateral estoppel doctrine.  It described the two doctrines as follows:

> Claim preclusion prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them. . . . Claim preclusion arises if a second suit involves: (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit.  . . . If claim preclusion is established, it operates to bar relitigation of the claim altogether.

> Issue preclusion prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action. . . . Under issue preclusion, the prior judgment conclusively resolves an issue actually litigated and determined in the first action. . . .  There is a limit to the reach of issue preclusion, however. In accordance with due process, it can be asserted only against a party to the first lawsuit, or one in privity with a party.

*Id.* (quotation marks and internal citations omitted).  Here, the Court concludes that the doctrine of claim preclusion, or res judicata, applies to Missud's state-law claims against the City Defendants. Therefore, the Court need not reach the question of whether those claims are also barred under the doctrine of issue preclusion, or collateral estoppel.

a.   Same Cause of Action

California courts apply the primary rights theory to determine whether two causes of action are identical for the purposes of claim preclusion.  *See Boeken*, 48 Cal. 4th at 797 (quoting *Slater v. Blackwood*, 15 Cal. 3d 791, 795 (1975)).  The California Supreme Court has explained:

> Under [the primary rights] theory, a cause of action arises out of an antecedent primary right and corresponding duty and the delict or breach of such primary right and duty by the person on whom the duty rests. Of these elements, the primary right and duty and the delict or wrong combined constitute the cause of action in the legal sense of the term.

*Id.* (quoting *McKee v. Dodd*, 152 Cal. 637, 641 (1908)) (ellipses, brackets, and internal quotation marks omitted).  Furthermore, "the phrase 'cause of action' has a . . . precise meaning:  The cause of action is the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced."  *Id.* (citing *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th 854, 860 (1993)).

24

The state-law claims that Missud asserted in Case 537723 are identical to the state-law claims that he asserts in the Complaint in this action. As discussed above, in the amended complaint filed in Case 537723, Missud asserted the following causes of action under California law: (1) "Fraud targeting Missud and the class"; (2) "Conspiracy to Defraud Missud and the class"; (3) "Misrepresentations made to Missud and the class"; and (4) "Deceptive Trade Practices targeting Missud and the class." RJN, Ex. C at 8–9, 20. The Complaint in the instant action lists virtually identical state law causes of action: (1) "Fraud targeting Missud"; (2) "Conspiracy to Defraud Missud"; (3) "Misrepresentations made to Missud"; and (4) "Deceptive Trade Practices targeting Missud." Compl. at 20–21. Furthermore, the underlying factual allegations upon which these claims are based are the same in both cases, namely, that the City Defendants are engaged in various schemes involving the illegal towing and sale of vehicles, including Missud's. In other words, in both Case 537723 and this case, Missud asserts the same primary right: to be free from harms associated with these alleged schemes, including harms caused by fraud, misrepresentation, unfair competition, and false claims. Because the same primary right is the basis for Missud's claims in both Case 537723 and this action, the first requirement of the test for res judicata is met.

### b.  Same Parties

Under California law, "claim preclusion applies only . . . to the relitigation of the same cause of action between the same parties or those in privity with them." *DKN Holdings*, 61 Cal. 4th at 825. Missud, as the plaintiff in Case 537723, constitutes a proper party against whom the doctrine can be asserted. Likewise, as a named defendant who was served properly in Case 537723, the City is a party entitled to assert the doctrine against Missud. The Court must address, however, whether the two remaining City Defendants—SFMTA Board Member Nolan and City Attorney Herrera—satisfy this element of the test.

In Case 537723, Nolan was sued based on his position as Director of SFMTA. *See* RJN, Ex. C (FAC in Case 537723) at 2. Missud never served Nolan, however, and therefore it is not clear that Nolan was actually a party to the state court action. City Attorney Herrera was not named as a defendant in Case 537723. While these defendants were not parties to the earlier

United States District Court
Northern District of California

1   action, the Court concludes they meet the requirements for privity under California law.  In *DKN*

2   *Holdings*, the California Supreme Court explained these requirements as follows:

> As applied to questions of preclusion, privity requires the sharing of
> "an identity or community of interest," with "adequate
> representation of that interest in the first suit, and circumstances
> such that the nonparty "should reasonably have expected to be
> bound" by the first suit. A nonparty alleged to be in privity must
> have an interest so similar to the party's interest that the party acted
> as the nonparty's "virtual representative" in the first action.

7   *Id.* at 826 (citations omitted, quotation marks altered).  The California Supreme Court further

8   explained that, "[w]hen a defendant's liability is entirely derivative from that of a party in an

9   earlier action, claim preclusion bars the second action because the second defendant stands in

10  privity with the earlier one. . . .  Derivative liability supporting preclusion has been found . . .

11  among alleged coconspirators."  *Id.* at 828 (citing, *inter alia*, *Richard B. Levine, Inc. v. Higashi*

12  131 Cal. App. 4th 566, 576–579 (2005)).

13          In *Richard B. Levine, Inc.*, the California Court of Appeal explained that there was no

14  reason why claim preclusion should not extend to a defendant who was sued on a conspiracy

15  theory that the plaintiff had already litigated against the alleged direct tortfeasor.  *See* 131 Cal.

16  App. 4th at 579.  That court further explained:

> Plaintiff has asserted an invasion of [his] primary right and it has
> been determined that right was not invaded. . . . It would be
> anomalous to hold [other defendants] liable for conspiring to
> commit a tort, or for aiding and abetting its commission, where
> plaintiff has already asserted those rights against the direct
> tortfeasor, the claim was adjudicated, and it was determined
> plaintiff's rights were *not* violated.

21  *Id.*

22          Here, Missud has named Nolan and Herrera as defendants but has included no specific

23  allegations against these individuals in his complaint.  Consequently, the only basis for liability as

24  to these defendants is their alleged participation in the conspiracies that Missud alleges are the

25  basis for his claims against the City.  To the extent judgment has already been entered against

26  Missud as to the City on these claims, Nolan and Herrera are in privity with the City as to the state

27  law claims because here, as in *Richard B. Levine, Inc. v. Higashi*, it would be anomalous if Missud

28  were permitted to pursue the same causes of action under the same conspiracy theory against

United States District Court
Northern District of California

26

United States District Court
Northern District of California

1   individuals who work in City agencies, like Nolan and Herrera, by virtue of his failure to serve or

2   join those individuals properly in his prior actions.  Therefore, the Court finds that all the City

3   Defendants satisfy this prong of the test for applying the doctrine of res judicata.

4               c.  Final Judgment on the Merits

5          Finally, the City Defendants must establish that Missud's state-law claims in this action

6   were adjudicated in Case 537723, resulting in a final judgment on the merits.  *See DKN Holdings*,

7   61 Cal. 4th at 824.  The California Supreme Court has held that, "for the purposes of applying the

8   doctrine of res judicata, . . . a dismissal with prejudice is the equivalent of a final judgment on the

9   merits, barring the entire cause of action."  *Boeken*, 48 Cal. 4th at 793.  In *Boeken*, the California

10  Supreme Court emphasized that a dismissal *with prejudice* means that a plaintiff's right of action

11  is terminated and may not be revived, barring future action on the same subject matter.  *Id.*

12         Here, the Superior Court dismissed Missud's entire case with prejudice pursuant to

13  California Code of Civil Procedure section 583.150 as a sanction for various forms of misconduct,

14  described above, on Missud's part.  California courts have inherent power to impose such

15  terminating sanctions under appropriate circumstances.  *See Stephen Slesinger, Inc. v. Walt Disney*

16  *Co.*, 155 Cal. App. 4th 736, 758 (2007).  Further, where terminating sanctions are imposed, the

17  judgment that results constitutes a judgment on the merits for the purposes of res judicata.  *See*

18  *Kahn v. Kahn*, 68 Cal. App. 3d 372, 378 (1990).  In *Kahn*, the California Court of Appeal

19  reasoned that such a result was warranted because permitting a party who has engaged in dilatory

20  conduct that was sufficiently egregious to justify the imposition of terminating sanctions "to suffer

21  no consequences other than the delay of filing a new action after his first has been dismissed

22  would seem to be an absurdity not intended by the Legislature."  68 Cal. App. 3d at 383.

23  Accordingly, the Court concludes that the judgment in Case 537723 was "on the merits" for the

24  purposes of res judicata.

25         In sum, the City Defendants have established that the three elements of California's test for

26  res judicata are satisfied as to Missud's state-law claims and, therefore, that Missud is precluded

27  from asserting those claims against the City Defendants in this action.

28

**D.      Missud's Complaint Fails to State a Cognizable Claim Against the Defendants**

The Court also finds that Missud has failed to state any valid claims against either the City Defendants or AutoReturn.[14]

**1.  The Fraud Claim**

Missud claims that Defendants defrauded him in violation of California Civil Code section 3294.  That section provides:

> In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

Cal. Civ. Code § 3294(a).  As the City Defendants and AutoReturn both observed in their demurrers in Case 537723,[15] this statute provides a basis for an award of punitive damages in certain civil actions and does not create a cause of action.  Indeed, the California Court of Appeal has recognized that "[t]here is no cause of action for punitive damages.  Punitive or exemplary damages are remedies available to a party who can plead and prove the facts and circumstances set forth in Civil Code [§] 3294 . . . ."  *Hilliard v. A. H. Robins Co.*, 148 Cal. App. 3d 374, 391 (1983); *see also Browand v. Scott Lumber Co.*, 125 Cal. App. 2d 68, 73–74 (1954) (explaining that punitive damages are incidents to a cause of action, but cannot serve as the basis of a cause of action).  Federal courts have likewise recognized that § 3294 cannot serve as the basis for an independent claim under California law.  *See*, *e.g.*, *Brown v. Adidas Int.*, 938 F. Supp. 628, 635

---

[14] AutoReturn did not argue in its motion that Missud's claims against it are barred under the preclusion doctrines discussed above.  Therefore, the Court does not address here whether Missud's claims against AutoReturn may be precluded for reasons similar to those discussed above with respect to the City Defendants, namely, that both this Court and the Superior Court already entered judgment against Missud on the same claims.  Although this is an issue that can be raised sua sponte, the Court declines to do so here because it finds that the claims asserted against AutoReturn fail on other grounds.

[15] The City's demurrer was filed on February 3, 2015.  In it, the City argues that Missud's amended complaint "does not state any *legally actionable* conduct by the defendant" and cites as an example that "Section 3294 of the Civil Code governs when punitive damages may be awarded against a defendant."  February 3, 2015, City's Mem. of P. & A. at 5–6; *see also* City's Demurrer.  Similarly, AutoReturn argued in its March 17, 2016 demurrer that "Civil Code section 3294 does not constitute a cause of action."  March 17, 2017 AutoReturn's Mem. of P. & A.; *see also* AutoReturn's Demurrer at 2.

United States District Court
Northern District of California

1    (S.D. Cal. 1996); *Blue Water Boating Inc. v. Plains All Am. Pipeline, L.P.*, No. cv 16-3283 PSG

2    (JEMx), 2017 WL 405425, at *8 (C.D. Cal. Jan. 26, 2017).

3          Nor has Missud alleged a plausible claim for fraud under California tort law.  "'The

4    elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false

5    representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent

6    to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'" *Lazar v.*

7    *Superior Court*, 12 Cal. 4th 631, 638 (1996) (quoting 5 Witkin, Summary of Cal. Law (9th ed.

8    1988) Torts, § 676, p. 778).  Under Rule 9 of the Federal Rules of Civil Procedure, fraud claims

9    must be pled with particularity.  Although Missud's complaint is full of accusations regarding

10   Defendants' alleged misconduct, he does not allege specific facts sufficient to raise plausible

11   inferences that any defendant knowingly made any specific false statements with the intent to

12   induce reliance or that Missud justifiably relied on those statements to his detriment.

13         Accordingly, Missud fails to state a valid claim, either under California Civil Code section

14   3294 or California tort law.

15                    **2.  The CLRA Claim**

16         Missud claims that Defendants violated the CLRA, which provides that certain "methods

17   of competition and unfair or deceptive acts or practices undertaken by any person in a transaction

18   intended to result or that results in the sale or lease of goods or services to any consumer are

19   unlawful." Cal. Civ. Code § 1770(a).  The City Defendants and AutoReturn contend that Missud

20   has failed to allege facts demonstrating that he is a *consumer* under that section and therefore, that

21   this claim fails.  The City similarly argued in its demurrer in Superior Court that Missud "failed to

22   articulate how the CLRA is applicable in the context of the City's traffic enforcement and towing

23   practices." February 3, 2015 City Demurrer at 6.  The Court agrees that Missud fails to state a

24   claim under the CLRA against the City Defendants or AutoReturn.

25         For the purposes of the CLRA, the California Civil Code defines *consumer* as "an

26   individual who seeks or acquires, by purchase or lease, any goods or services for personal, family,

27   or household purposes."  Cal. Civ. Code § 1761(d).  In this action, Missud alleges that his cars

28   were unlawfully taken from him and sold.  He does not allege that he sought or acquired a good or

United States District Court
Northern District of California

1  service by purchase or lease.  Thus, he is not a *consumer* under the CLRA.  *See Balsam v.*

2  *Trancos, Inc.*, 203 Cal. App. 4th 1083, 1105–06 (2012) (holding that the plain text of California

3  Civil Code § 1761(d) excluded a person who did not seek or acquire any goods or services

4  advertised in unsolicited emails).  Thus, the CLRA claim fails as to all Defendants.

5  **3.  The UCL Claim**

6  In their state court demurrers and in this action, the City and AutoReturn argued that

7  Missud had not alleged facts sufficient to state a claim against them under the UCL.[16]  The Court

8  agrees.

9  The UCL prohibits any "unlawful, unfair or fraudulent business act or practice" and

10  provides for injunctive relief and penalties against any "person" who violates the UCL.  Cal. Bus.

11  & Prof. Code §§ 17200, 17201, 17203, 17206.  In his UCL claim, Missud alleges that the City

12  "gives AutoReturn exclusive authority to seize, tow, store, and steal constituents' vehicles under

13  color-of-law" and "allows AutoReturn to set anticompetitive anti-trust monopoly rates for its

14  services." Compl. at 19.  He further alleges that "these deceptive, fraudulent, and unfair practices

15  in restraint of trade and competition can be enjoined in any court of competent jurisdiction." *Id.*

16  Thus, his UCL Claim appears to be based on the "unfair" and "fraudulent" prongs of section

17  17200.

18  Under the UCL, an "unfair" business practice is one that "threatens an incipient violation

19  of an antitrust law, or violates the policy or spirit of one of those laws because its effects are

20  comparable to or the same as a violation of the law, or otherwise significantly threatens or harms

21  competition." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Company*, 20

22  Cal. 4th 163, 186–87 (1999).  "A business practice is fraudulent under the UCL if members of the

23  public are likely to be deceived." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th

---

[16] The City argued in its demurrer that Missud merely recites "bare legal conclusions" in support of his UCL claim and does not provide any factual information as to any of the provisions of the California Business and Professions Code are applicable to the instant case."  February 3, 2015 City's Mem. of P. & A.; *see also* City's Demurrer.  Similarly, AutoReturn argued in its demurrer that Missud's allegations do not contain the specificity necessary to state a claim under the UCL. March 16, 2016 AutoReturn's Mem. of P. & A.; *see also* AutoReturn's Demurrer.

United States District Court
Northern District of California

30

1   Cir. 2012).  Fraudulent business practices under the UCL include misleading advertisements and

2   conduct which would tend to mislead the public.  *See, e.g.*, *Kasky v. Nike, Inc*., 27 Cal. 4th 939

3   (2002), as modified (May 22, 2002) (holding that statements by the defendant about the working

4   conditions of its overseas employees were not protected by the First Amendment and could give

5   rise to a claim for fraudulent business practices under the UCL); *Klein v. Chevron U.S.A., Inc*.,

6   202 Cal. App. 4th 1342, 1381 (2012), as modified on denial of reh'g (Feb. 24, 2012) (finding that

7   fraudulent conduct under the UCL was adequately alleged where the plaintiffs "alleged that, by

8   selling motor fuel in non-temperature-adjusted 'gallon' units without disclosing the effects of

9   thermal expansion, [the defendant had] deceived consumers into believing that they [were]

10  receiving a standard quantity of motor fuel at each purchase.").

11      As a preliminary matter, California courts have held that a government entity is not a

12  "person" under the UCL and therefore, Missud's UCL against the City fails on that ground alone.

13  *See Aegis Software, Inc. v. 22nd Dist. Ag. Assoc.*, Co. 15-cv-2956-BTM (BLM), 2016 WL

14  4542360, at *7 (S.D. Cal. Aug. 31, 2016) ("The UCL does not include state institutions in its

15  definition of a 'person.'"); *Trinkle v. Cal. State Lottery*, 71 Cal. App. 4th 1198, 1203 ("The state is

16  neither a natural person, partnership, corporation, association, nor other 'organization[] of

17  persons.'")  As to the remaining Defendants, Missud has not identified any specific antitrust law

18  as to which there has been a violation or an incipient violation, or any facts that would show such

19  a violation or incipient violation as required to state a UCL claim based on an unfair business

20  practice.[17]  Nor has Missud alleged any facts raising a plausible inference that a reasonable person

21  would be misled by any statements or conduct by any of the defendants named in this action, as is

22  required to state a UCL claim based on a fraudulent business practice.  Indeed, Missud included *no*

23  specific allegations about Defendants Nolan and Herrera in connection with this (or any other)

24  claim.

25

26  [17]It is possible that AutoReturn is also protected by the immunity afforded private companies that
    carry out state regulatory programs.  *See F.T.C. v. Phoebe Putney Health Sys., Inc*., 133 S. Ct.

27  1003, 1011 (2013).  The Court does not reach this question, however, because Missud has not
    alleged any conduct that is actionable under the UCL.

28

1    Therefore, the Court finds that Missud fails to state a claim against any defendant under

2    the UCL.

3            **4.  The CFCA Claim**

4            In the demurrer and in this action, the City and AutoReturn argue that Missud fails to state

5    a claim under the CFCA.[18]  Again, the Court agrees.

6            Under the CFCA, "'[p]ersons' who knowingly submit false claims to state or local

7    governments may be sued." *Wells v. One2One Learning Found.*, 39 Cal. 4th 1164, 1179 (2006),

8    as modified (Oct. 25, 2006) (citing Cal. Gov't Code § 12651).  "[U]nder certain circumstances,

9    'persons' may also bring 'qui tam' actions, on behalf of defrauded governmental entities, against

10   alleged false claimants." *Id.* (citing  Cal. Gov't Code § 12652(c)).  Missud alleges that

11   AutoReturn's practice of towing cars on the City's behalf violates the CFCA.  Missud further

12   alleges that AutoReturn bills the City for towing and storage fees related to those practices.  He

13   does not, however, allege that AutoReturn misstates its charges to the City or conceals them from

14   the City.  In fact, Missud alleges *no* facts that raise a plausible inference that AutoReturn has made

15   any false claims to any state or local entity.  Nor has he alleged any facts suggesting that any other

16   defendant has made any false claims against any state or local government.

17           Further, to the extent Missud may allege that any defendant has made a false statement to

18   *him*, he has not plausibly alleged that he represents any state or local government entity or that

19   such a statement constitutes a "claim" within the meaning of the CFCA.  *See* Cal. Gov't Code §

20   12650(b)(1)(A) ("'Claim' means any request or demand, whether under a contract or otherwise,

21   _____

22   [18]The City argued in its demurrer  as follows:

23           Lastly, plaintiff claims that the City violated the [CFCA]. The CFCA allows the government
             . . . , through the Attorney General or local prosecutors, or individual citizens to bring civil

24           actions to recover damages, penalties and costs when government contractors, vendors or
             others defraud the government. For purposes of the CFCA, "government" includes local

25           governmental entities . . . . Here, plaintiff merely cites to the definition of a "claim" under the
             CFCA and fails to identify any other section of the Code that would be applicable to his cause

26           of action. Because plaintiff has fails [*sic*] to identify any action taken by defendant that could
             form the basis of a cause of action, this demurrer must be sustained.

27   Feb. 3, 2015 City Demurrer at 6–7.  AutoReturn argued in its demurrer that Missud "failed to
     allege the necessary facts to state a claim under the False Claims Act."  March 16, 2016

28   AutoReturn Demurrer at 3.

United States District Court
Northern District of California

for money, property, or services, and whether or not the state or a political subdivision has title to the money, property, or services that meets either of the following conditions: (A) Is presented to an officer, employee, or agent of the state or of a political subdivision. . . .").

Therefore, the Court concludes Missud fails to state a claim against any Defendant under the CFCA.

### 5.   The 42 U.S.C. § 1983 Claim

In this case, like the Prior Actions, Missud invokes the Takings Clause of the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment in support of his § 1983 claim.  *See* Compl. at 20 (alleging that Defendants "deprived Missud of state and federal due process, fairness, equality, . . . and of personal property (5 cars) in violation of the takings clause").  As explained above, in *Missud I* the court considered and rejected the same claims.  *See* 2013 WL 450391, at \*4–5.  The court's holding there applies with equal force in this case.  As the court explained, "Towing cars that have accumulated an excessive number of parking tickets is an exercise of police power, and not a taking for public purposes within the meaning of the Takings Clause."  *Id.* at \*4.  Likewise, the City's citation process, as alleged by Missud, "is sufficient to meet the notice requirement for towing a car," and Missud has in fact challenged the validity of citations issued for his cars through the City's applicable procedures.  *Id.* at \*5.  Therefore, for the reasons set forth in *Missud I*, the undersigned finds that Missud fails to state a claim under § 1983 against any defendant in this action.

### E.   The Causes of Action Are Dismissed Without Leave to Amend

Finally, the Court concludes that Missud's claims should be dismissed with prejudice and without leave to amend.  "A district court may deny a plaintiff leave to amend if it determines that 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,' *Schreiber Distrib. Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986), or if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies, *Foman v. Davis*, 371 U.S. 178, 182, (1962)."  *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (citations altered).  To the extent that Missud's claims are barred under the doctrines of res judicata and collateral estoppel, amendment cannot cure this

United States District Court
Northern District of California

deficiency.  Moreover, as discussed above, each of the claims Missud asserts in this case has been challenged for failure to state a claim on multiple occasions.  Missud has repeatedly failed to offer any meaningful response and continues to assert the same claims.  There is no indication that granting Missud leave to amend at this point would result in the assertion of cognizable claims and the record to date strongly indicates that it would not.  Missud's Complaint is therefore dismissed without leave to amend.

**IV.    CONCLUSION**

For the reasons stated above, the City Defendants' Motion to Dismiss is GRANTED, AutoReturn's Motion for Judgment on the Pleadings is GRANTED, and Missud's Motion for Summary Judgment is DENIED.  The case is DISMISSED WITH PREJUDICE.  The Clerk is ordered to enter judgment in favor of Defendants and close the file.

**IT IS SO ORDERED.**

Dated: March 21, 2017

JOSEPH C. SPERO
Chief Magistrate Judge

United States District Court
Northern District of California